# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

## CASE NO. 11-13044-C
_____

NATHAN DEAL, Governor of the
State of Georgia, et al.,

                                    Defendants/Appellants.

     v.

GEORGIA LATINO ALLIANCE
FOR HUMAN RIGHTS, et al.,

                                    Plaintiffs/Appellees,

_____

On Appeal From the United States District Court
For the Northern District of Georgia

## 1:11-CV-1804-TWT
_____

## REPLY BRIEF OF APPELLANTS
_____

|  |  |
|---|---|
| | SAMUEL S. OLENS    551540 |
| | Attorney General |
| | |
| | KATHLEEN M. PACIOUS   558555 |
| Please Serve: | Deputy Attorney General |
| DEVON ORLAND | |
| 40 Capitol Sq., S.W | |
| Atlanta, Ga. 30334-1300 | DEVON ORLAND    554301 |
| PH:   (404) 463-8850 | Senior Assistant Attorney General |
| FAX:  (404) 651-5304 | |

<u>**Georgia Latino Alliance for Human Rights v. Deal**</u>
**DOCKET NO.: 11-13044-C**

<u>**CERTIFICATE OF INTERESTED PERSONS AND**</u>
<u>**CORPORATE DISCLOSURE STATEMENT**</u>

The undersigned attorney for Appellants hereby certifies, pursuant to

11th Cir. R. 26.1-1, that the following have an interest in the outcome of this

case:

Alterna, Plaintiff/Appellee;

Asian American Legal Advocacy Center, Plaintiff/Appellee;

Bauer, Mary, Counsel for Appellees;

Beatty, Mike, Defendant/Appellant;

Blazer, Jonathon, Counsel for Appellees;

Bridges, Paul, Plaintiff/Appellee;

Broder, Tanya, Counsel for Appellees;

Brooke, Samuel, Counsel for Appellees;

Coalition of Latino Leaders, Plaintiff/Appellee;

Coalition for the People's Agenda, Plaintiff/Appellee;

Conley, Danielle, Counsel for Appellees;

Deal, Nathan, Defendant/Appellant;

Desormeau, Katherine, Counsel for Appellees;

Doe, Jane #1, Plaintiff/Appellee;

Doe, Jane#2, Plaintiff/Appellee;

Doe, John #1, Plaintiff/Appellee;

Doe, John #2, Plaintiff/Appellee;

DREAM Activist.org; Plaintiff/Appellee;

Edwards, Paul, Plaintiff/Appellee;

Federal, Robert Keegan, Counsel for Appellees;

Georgia Latino Alliance for Human Rights, Plaintiff/Appellee;

Gruner, Sharon, Plaintiff/Appellee;

Howe, Everitt, Plaintiff/Appellee;

Jackson, Chara, Counsel for Appellees;

Jadwat, Omar, Counsel for Appellees;

Joaquin, Linton, Counsel for Appellees;

Keaney, Melissa, Counsel for Appellees;

Kuck, Charles, Counsel for Appellees;

Instituto de Mexico, Plaintiff/Appellee;

Lapointe, Michelle, Counsel for Appellees;

Ling, Sin Yen, Counsel for Appellees;

Mukherjee, Elora, Counsel for Appellees;

Olens, Samuel S., Attorney General, Attorney for Defendants/Appellants
     Deal, Olens, Beatty and Reese and Defendant/Appellant;

Orland, Devon, Senior Assistant Attorney General,
   Attorney for Defendants/Appellants Deal, Olens, Beatty and Reese;

Pacious, Kathleen M., Deputy Attorney General,
   Attorney for Defendants/Appellants Deal, Olens, Beatty and Reese;

Pickens, Andrew, Counsel for Falecia Stewart;

Pinon, Ernesto, Plaintiff/Appellee;

Preciado, Nora, Counsel for Appellees;

Reese, Clyde, Defendant/Appellant;

Segura, Andre, Counsel for Appellees;

Service Employees International Union, Plaintiff/Appellee;

Shahshahani, Azadeh, Counsel for Appellees;

Singh, Jaypaul, Plaintiff/Appellee;

Southern Regional Joint Board of Workers' United, Plaintiff/Appellee;

Spears, George Brian, Counsel for Appellees;

Speight, Benjamin, Plaintiff/Appellee;

Stewart, Falecia, Defendant;

Sugarman, Kenneth, Counsel for Appellees;

Task Force for the Homeless, Plaintiff/Appellee;

Thrash, The Honorable Thomas, United States District Judge,
   Northern District of Georgia, Atlanta Division;

Tumlin, Karen C., Counsel for Appellees;

Turner, Andrew, Counsel for Appellees;

Tsu, Naomi, Counsel for Appellees;

Wang, Cecillia, Counsel for Appellees; and

Werner, Daniel, Counsel for Appellees.

Respectfully submitted,

/s/ Devon Orland
Devon Orland Bar No. 554301
Senior Assistant Attorney General

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ............................................C1

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES .......................................................... ii

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ............................ v

A.  CHALLENGERS' STANDING ARGUMENT IMPROPERLY
    RELIES UPON HARM CAUSED BY DISMISSED CLAIMS
    RATHER THAN THE SOLE REMAINING CLAIM. ........................ 1

B.  CHALLENGERS CANNOT PURSUE A PRIVATE RIGHT OF
    ACTION UNDER THE SUPREMACY CLAUSE ............................. 6

C.  FEDERAL LAW DOES NOT PREEMPT HB87 ................................ 8

    1. Section 7 is not preempted .......................................... 10

    2. Section 8 is not preempted .......................................... 13

D.  EQUITIES FALL IN FAVOR OF THE STATE ................................ 20

CONCLUSION........................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

**Page**

*Baker v. McCollan*, 443 U.S. 137 (1979) .................................................... 18

*Blessing v. Freestone,* 520 U.S. 329 (1997) ................................................ 8

*Bloedorn v. Grube*, 631 F. 3d 1218 (11th Cir. 2011) ...................................... 2

*Cal. Coastal Com v. Granite Rock Co.*,
    480 U.S. 572 (1987) .................................................................................. 13

*Chamber of Commerce v. Whiting*,
    131 S. Ct. 1968 (2011) ............................................................. 9, 15, 16, 18

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................................................... 19

*Cliff v. Payco Gen. Am. Credits, Inc.*,
    363 F.3d 1113 (11th Cir. 2004) ............................................................... 10

*D.C. v. Carter*, 409 U.S. 418 (1973) ............................................................ 8

*DeCanas v. Bica*, 424 U.S. 351 (1976) ........................................... 8, 9, 15, 18

*Goldhamer v. Shirmer*, 621 F.3d 581 (7th Cir. 2010) ..................................... 1

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ................................................................ 7

*Frank Bros., Inc. v. Wisconsin Dept. of Transp.*,
    409 F.3d 880 (7th Cir. 2005) ............................................................. 15, 18

*Golden State Transit Corp. v. Los Angeles*
    493 U.S. 103 (1989) .................................................................................... 3

*Goldhamer v. Shirmer*, 621 F.3d 581 (7th Cir. 2010) ..................................... 1

*Gonzaga University v. Doe*, 536 U.S. 273 (2002) ...................................... 7, 8

*Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir. 1983) ............................. 5

*Heath v. Alabama,* 474 U.S. 82 (1985) .................................................... 9, 10

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ............................................... 17, 18

*KH Outdoor, LLC v. Clay Cnty.*,
   482 F. 3d, 1303 (11th Cir. 2007) ...................................................... 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................... 2, 4

*Maverick Media Grp., Inc. v. Hillsborough Cnty*,
   528 F.3d 817 (11th Cir. 2008) .......................................................... 4

*Muehler v. Mena*, 544 U.S. 93 (2005) ..................................................... 5

*North Dakota v. United States*, 495 U.S. 423 (1990) ................................. 20

*Pickens v. Hollowell*, 59 F.3d 1203 (11th Cir. 1995) .................................. 18

*Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir. 1983) ................... 7, 8

*Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001) ..................................... 2

*Randall v Scott,* 621 F.3d 701 (11th Cir. 2010) ......................................... 7

*Rice v. Norman Williams Co.,* 458 U.S. 654 (1982) .................................. 12

*Scurlock v. City of Lynn Haven*,
   858 F.2d 1521 (11th Cir. 1988) ....................................................... 7, 8

*United States v. Arizona*,
   703 F. Supp. 2d 980 (D. Ariz. 2010) .............................................. 18, 19

*United States v. Drayton*, 536 U.S. 194 (2002) ...................................... 14

*United States v. Salinas-Calderon*,
   728 F.2d 1298 (10th Cir. 1984) ...................................................... 5

*United States v. Vasquez-Alvarez,*
  176 F.3d 1294 (10th Cir. 1999) ...................................................... 5

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) .................................................................... 12

*Westfall v. United States,* 274 U.S. 256, 258 (1927) ............................... 9, 10

*Wilderness Society v. Kane County,*
  632 F.3d 1162 (10th Cir. 2011) ..................................................... 1

*Wyeth v. Levine,* 555 U.S. 555 (2009) ......................................................... 12

**Statutes**

42 U.S.C. § 1983 ................................................................................. 7, 8

8 U.S.C. § 1324 .............................................................. 5, 11, 12, 13, 20

8 U.S.C. § 1304(e) ............................................................................ 15

8 U.S.C. § 1644 ................................................................................. 20

O.C.G.A. § 16-11-200 (a)(1) ........................................................... 18

O.C.G.A. § 17-5-100(e) ................................................................. 17, 18

O.C.G.A. § 17-5-100(2)(b) and (6)(c) ............................................ 14

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that this brief complies with FRAP 32(a)(7)(B) and contains 4,107 words according to the word processing system utilized by the Office of the Attorney General.

This brief complies with FRAP 32(a)(5) and FRAP 32(a)(6) and has been prepared in Times New Roman 14-point font.

/s/ Devon Orland
Devon Orland
Senior Assistant Attorney General

## A. CHALLENGERS' STANDING ARGUMENT IMPROPERLY RELIES UPON HARM CAUSED BY DISMISSED CLAIMS RATHER THAN THE SOLE REMAINING CLAIM.

Challengers' professed "injury"[1]—being improperly stopped based upon pretext; being harassed during questioning; being arrested for minor offenses based upon probable cause[2]—is too speculative and is not caused by Sections 7 or 8 of HB87. HB87 does not allow pretextual stops or harassment any more than current law does. Moreover, both Sections require probable cause that a separate crime has been committed before a stop may legally occur; in the absence of HB87, the same probable cause would also give rise to a legal stop and questioning. Accordingly, Challengers lack standing to challenge HB87. *See Goldhamer v. Shirmer*, 621 F.3d 581, 584-588 (7th Cir. 2010) (plaintiffs lacked standing to seek injunctive relief concerning the enforcement of a statute based on a fear of future prosecution despite the fact that they had been previously arrested

---

[1] In addition to the inadequacy of Challengers' alleged injuries as described in the body text, the injuries are also inadequate because they were alleged in support of claims that have since been dismissed. Challengers' alleged injuries bear no relation whatsoever to whether HB87 trenches on the prerogatives of the federal government and is therefore preempted. In that regard, Challengers essentially seek to assert the rights of the federal government, and should be precluded from doing so. *See, e.g., Wilderness Society v. Kane County*, 632 F.3d 1162 (10th Cir. 2011) (dismissing Supremacy Clause challenge because private group lacked prudential standing to assert the interests of the federal government).

[2] The various *amici* also make similar claims of potential harm. These claims are also speculative and based upon dismissed claims, and, in any event, cannot add to claims not otherwise asserted by the actual parties.

1

under the statute for the same conduct because their prior arrests were baseless and unsupported by the statute).

The burden is on Challengers, as the parties seeking to invoke jurisdiction, to produce facts sufficient to show the three prongs of standing: injury, causation, and redressability. *Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). This Court reviews"de novo whether a plaintiff has standing to bring suit in federal court." *Pittman*, 267 F.3d at 1282. Challengers' failure to prove these prongs is fatal to their case.

Challengers' alleged injuries are too speculative. To establish that an injury is imminent, Challengers must show "that the anticipated injury [will] occur within some fixed period of time in the future. Immediacy, in this context, means reasonably fixed and specific in time and not too far off." *Bloedorn v. Grube*, 631 F. 3d 1218, 1228 (11th Cir. 2011). Here, Challengers and the *amici* maintain that they have a fear of arrest and unlawful harassment. They highlight the impact on persons being stopped for committing other criminal offenses and claim that they will be targeted based upon race, as they allegedly have many times before. There are several problems with Challengers' arguments. As noted extensively in the State's opening brief, the "fear" is entirely speculative particularly in light of

the chain of future events that must occur prior to HB87 allowing any action to be taken by law enforcement beyond actions they are already permitted to take, i.e., law enforcement must encounter a Challenger, events must take place to give law enforcement probable cause to believe the Challenger has committed a crime, law enforcement decides to detain Challenger, and so on.[3] While Challengers rely on the legal truism that "imminent fear of arrest" for the exercise of a fundamental right is sufficient to show standing, there is no legal basis where as here no fundamental right exists.[4] Such attenuated, speculative alleged injuries do not support a pre-enforcement challenge.

Challengers suggest that "racial profiling is already occurring as a result of Georgia peace officers' interest in investigating immigration status." (Red brief p. 14). Assuming that this is true and they are subjected to arrest, harassment and racial profiling absent the statute at issue, Challengers cannot show a causal connection between HB87 and the

---

[3] Challengers' complaint is far from clear as to which party has standing to assert which claim. Indeed in their 82 page complaint, Challengers do not assert their first claim until page 74 at which point they make no effort to actually tie the alleged facts or parties to any particular claim. While it is true that only one Plaintiff is required to evidence standing for each claim, neither Challengers nor the District Court have attempted to show which party has standing to assert a claim for a violation of the Supremacy Clause and who has injuries stemming from this sole remaining claim.

[4] The Supreme Court has long held that the Supremacy Clause is not a source of any federal right. *Golden State Transit Corp v. Los Angeles.*, 493 U.S. 103, 107 (1989).

articulated harm.[5]  This Court should decline the invitation to allow Challengers to establish Article III standing based upon "feared" violations of fundamental rights where no fundamental rights are at issue.

Moreover, Challengers' strained evidence of imminence defeats any attempt to show redressability.  *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (*citing to Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)).  As the complained-of actions predate the challenged statute, the harm cannot be alleviated by nullification of HB87.  As a result, the "harm" cannot be redressed through the continued enforcement of this injunction.  *See, e.g. Maverick Media Grp., Inc. v. Hillsborough Cnty*, 528 F.3d 817, 821 (11th Cir. 2008) (no standing where alleged injury cannot be redressed by a favorable decision); *KH Outdoor, LLC v. Clay Cnty.*, 482 F. 3d, 1303-04 (11th Cir. 2007)(same).

Further undermining redressability is pre-existing law that where there is probable cause to believe a crime has been committed or an individual is otherwise legally detained, law enforcement can question the individual about immigration status.  As a result, the potential for "harm" would exist

---

[5] While Challengers and the District Court note that the current administration has established priorities which may exclude them from arrest and interrogation, neither has shown that these priorities carry any legal applicability.  Rather, it is Congress that establishes the scope of federal authority.  The executive enforces that authority and utilizes resources at its discretion, but that discretion evolves as priorities change due to attrition or change of points of view.  Neither Challengers nor the District Court suggest that the priorities override clear congressional intent establishing alienage requirements.

with or without the existence of HB87, which at least requires probable cause of another criminal offense prior to sanctioning any further inquiry. *See Muehler v. Mena*, 544 U.S. 93 (2005) (where an individual is lawfully detained questioning related to immigration status does not amount to a separate seizure); *see also United States v. Salinas-Calderon*, 728 F.2d 1298, 1301 n.3 (10th Cir. 1984)(state trooper had authority to arrest driver, stopped for a traffic violation, for transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2)); *United States v. Vasquez-Alvarez*, 176 F.3d 1294 (10th Cir. 1999)(local law enforcement arrest of illegal alien valid despite lack of specific authorization within the federal law based upon preexisting authority for local police officers to investigate and make arrests); *Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir. 1983)(local law enforcement have authority to enforce federal immigration laws even where federal law provides no express authority).

These issues are equally applicable to the claims made by the Challenger Organizations. The harm claimed by the organizations, the need to divert resources and fear of arrest of its members, is speculative and relates to claims dismissed by the District Court rather than the impact of the sole remaining claim. As Challengers did not show that any alleged

diversion of resources related to the two enjoined provisions and for the reasons already argued, the Organizational Challengers lack standing.

Lastly, as neither the Attorney General nor the Governor has any enforcement authority over this statute, they are not the proper parties to be enjoined and Challengers' complaints cannot be redressed through this injunction. The Attorney General and the Governor may be proper parties for challenges to facial validity, but not for the remedy of an injunction; they lack enforcement authority over the vast majority of the statute, and Challengers do not identify any basis by which the Attorney General or Governor may exercise legal authority over the legally independent local law enforcement agencies that do have enforcement authority. As a result, the District Court erred in concluding that Challengers' "harm" can be redressed through an injunction issued against the Attorney General and Governor of the State of Georgia.

## B. CHALLENGERS CANNOT PURSUE A PRIVATE RIGHT OF ACTION UNDER THE SUPREMACY CLAUSE

Challengers pay short shrift to the State Defendants' argument that they have no mechanism to pursue this action. In so doing, they ignore years of legal development narrowing the scope of federal jurisdiction to actions specifically rather than impliedly articulated by Congress and the clear precedent of this Court.

Challengers present no authority or analysis to support the District Court's finding that the INA creates a private right of action and that the action is enforceable under 42 U.S.C. § 1983. Rather they cursorily cite to *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) and suggest that it supports pursuit of the claim. Neither the District Court nor Challengers point to a specific provision within the INA that evidences congressional intent to create a private right to benefit them nor do they counter the argument that the statutory scheme itself would foreclose any such individual right of action[6]. Absent such rights-creating language, there can be no such private right of action. *Id.* at 282-285. Further, both Challengers and the District Court ignore this Court's precedent that clearly finds that preemption claims are not cognizable under § 1983. *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir. 1983); *Scurlock v. City of Lynn Haven*, 858 F.2d 1521, 1529 (11th Cir. 1988).

Challengers similarly ignore the lack of support for the proposition that a private preemption action can be brought directly under the

_____

[6] It should also be noted that Challengers made no such claim in their complaint. Absent such a factually supported allegation, they cannot now claim that their injunction is premised upon a right that has not been identified or threatened. "[C]omplaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010). *See also, Financial Security Assurance, Inc., v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

Constitution instead of relying on cases that declare federal jurisdiction over claims where preemption is at issue. Neither the United States Supreme Court nor this Court has analyzed how such a claim could be pursued. Since its decision in *Blessing v. Freestone,* 520 U.S. 329, 340 (1997), the Supreme Court has judiciously narrowed the scope of any private right of action absent express intent of Congress. If actions could be brought directly under the Constitution, there would have been no need to create a vehicle for individuals to pursue claims for alleged breach of their Constitutional rights. In light of *Blessing, Gonzaga* and the lack of clear Congressional intent to create either a right or a vehicle for private redress, it simply defies logic to suggest that a private right of action can be pursued under the Constitution absent a specific Congressionally-created mechanism. *See D.C. v. Carter*, 409 U.S. 418, 425 (1973) (detailing historic need for creation of a private remedy to address constitutional wrongs).

## C.    FEDERAL LAW DOES NOT PREEMPT HB87

It is true that the exclusive power to regulate immigration rests with the federal government. A regulation of immigration "is essentially a determination of who should or should not be admitted to the country, and the conditions under which a legal entrant may remain." *DeCanas v. Bica*, 424 U.S. 351, 355 (1976). Neither Section 7 nor 8 of HB87 define alienage,

alter legality or determine deportability of any individual. Rather, Section 7 provides for criminal sanctions for individuals who commit another criminal offense and then knowingly transport, harbor, or entice illegal aliens in Georgia. Section 8 allows for local law enforcement to investigate alienage and act as authorized by state and federal law if probable cause exists to believe another crime has been committed. Nothing in these sections conflicts with the United States' exclusive authority to regulate immigration.

The INA includes the federal statute prohibiting similar conduct, but this does not convert the criminal statute into one regulating immigration. The Supreme Court has rejected the concept that anything touching the web of immigration law remains entangled within it in favor of recognizing the freedom of the state's police power to control the expenditure of its own resources. *See DeCanas,* 424 U.S. at 356; *Whiting*, 131 S. Ct. at 1979-80. States are separate sovereigns with respect to the federal government because each State's power to prosecute is derived from its own "inherent sovereignty," not from the federal government. *Heath v. Alabama,* 474 U.S. 82, 89 (1985). The fact that states can enact laws which impose state penalties for conduct that federal law also sanctions, without being preempted, is "too plain to need more than statement." *Westfall v. United States,* 274 U.S. 256, 258 (1927).

In addition to failing to acknowledge the State's inherent police power and interest in controlling its resources, Challengers' preemption arguments rely on a flawed theory of federal exclusivity and fail to acknowledge that HB87 mirrors and supports federal objectives. As neither Sections 7 nor 8 make it impossible to comply with state and federal law and the goals of both sections mirror congressional objectives, neither section is preempted. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121-22 (11th Cir. 2004) ("Conflict preemption… arises in two circumstances: when it is impossible to comply with both federal and state law and when state law stands as an obstacle to achieving the objectives of the federal law."). Furthermore, complete or field preemption "occurs when regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it." There is no field preemption, and Sections 7 and 8 mirror – not conflict with – Congressional objectives.

1.      **Section 7 is not preempted**

While Challengers attempt to parse words in comparing Section 7 with 8 U.S.C. § 1324 their attempt to distinguish the goals of the two provisions is without merit. A side by side comparison of the two provisions shows little difference, and even on the few occasions where language does vary, the purposes of the two provisions remain virtually identical.

Both the District Court and Challengers emphasize that Section 7 criminalizes efforts where individuals facilitate illegal aliens coming to or remaining in Georgia from another state and suggest that the companion federal provisions do not criminalize such behavior in favor of only regulating when persons are transported or enticed from another country into the United States. While it is true that Section 7 only criminalizes actions that occur within Georgia, Georgia is within the United States; someone who either transports or encourages an alien to come to, enter or reside in Georgia would also be encouraging an alien to commit an illegal act within the United States. Thus, it cannot be disputed that the intent of § 1324 and Section 7 is the same: to prevent people from providing transportation to, encouraging or otherwise assisting illegal aliens from coming to and remaining in this state unlawfully. It is true that § 1324 covers the United States rather than Georgia exclusively but this does not change the objectives as applied to this state.

Challengers largely seem focused on the wording differences between Section 7 and § 1324 and complain that based upon the wording of the statutes they will be enforced more broadly than what has been defined under judicial interpretation of § 1324. Challengers' objection ignores two key points: first, this is a facial not an as-applied challenge; and second,

Congressional purpose – not wording choice – controls the preemption inquiry.

By focusing on differing enforcement, Challengers attempt to predict how HB87 will be enforced and presume it will be enforced inconsistently with federal law. This argument, however, is only speculation as to the future application of the law, rather than the full review required by a true facial challenge. As Challengers have brought a facial challenge to this provision, the argument has no merit. To succeed, they must show that the law is unconstitutional in all of its applications. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Moreover, this type of analysis suggests a "potential" rather than an "actual" conflict, which is insufficient to warrant a finding of preemption. *Rice v. Norman Williams Co.,* 458 U.S. 654, 659 (1982) (considering facial challenge under the Sherman Act and noting similarity to Supremacy Clause challenge); *see also Cal. Coastal Com v. Granite Rock Co.*, 480 U.S. 572, 589 (1987) ("identification of a possible [application of state law that is] not pre-empted by federal law is sufficient to rebuff Granite Rock's facial challenge" to the state law).

If HB87 has broader implications than § 1324, it is the mirror of purpose not the application that control. *See Wyeth v Levine*, 555 U.S. 555,

129 S. Ct. 1187, 1194-95 (2009) ("the purpose of Congress is the ultimate touchstone in every pre-emption case"). The purposes of these two provisions are identical: to stop people from facilitating and encouraging illegal aliens to come to and remain in the country/state illegally. Neither the District Court nor Challengers have articulated how the objectives of these provisions conflict or how Section 7 conflicts with the United States' inherent authority to define its borders and conditions by which they may be crossed.

## 2. Section 8 is not preempted

Challengers' attack on Section 8 also fails. First, they contend that many aliens do not have appropriate identification and others have been allowed to stay in the country based upon a decision by federal officials. Next, they contend that Section 8 allows local law enforcement to investigate legality beyond the scope allowed by the federal government. Lastly, they suggest that Section 8 adversely impacts foreign relations. None of these arguments succeeds.

Individuals are not required to carry any form of identification under HB87 but should they choose to carry one of the enumerated forms of identification it will conclusively establish alienage. Should they not, there are other pre-defined "reasonable means available" for investigating

immigration status, and those means can be exercised only during an "investigation of a criminal suspect." O.C.G.A. § 17-5-100(2)(b) and (6)(c).

Similar investigatory stops, even absent probable cause, have long been held to be constitutionally valid. *United States v. Drayton*, 536 U.S. 194, 200 (2002). Even when a police officer has no basis for suspecting an individual, he may pose questions and ask for identification, provided he does not induce cooperation by coercive means. *Id*. at 201. Since any request for identification under Section 8 would need to be preceded by probable cause and a separate inquiry related to citizenship does not amount to a separate seizure, and no arrest can be made absent authority provided by federal law, Challengers' claim of preemption must fail.

Challengers also ignore the requirement that federal law already requires that every alien shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him. 8 U.S.C.S. § 1304(e). Challengers suggest that Section 8 conflicts with federal law because it creates a new requirement that individuals maintain proof of citizenship. As the INA already requires aliens to carry their registration documents, and Section 8 accepts these documents and many others as proof of alienage, there can be no conflict. Section 8 makes it clear to local law enforcement that when they have

probable cause to believe another crime has been committed they can seek verification of citizenship. No provision of the INA prohibits such an inquiry. "[S]ilence on the part of Congress alone is not only insufficient to demonstrate field preemption, it actually weighs in favor of holding that it was the intent of Congress not to occupy the field." *Frank Bros., Inc. v. Wisconsin Dept. of Transp.,* 409 F.3d 880, 891 (7th Cir. 2005). The Court in *Hines*, discussed infra, did rely "on the comprehensiveness of the federal regulatory scheme[] in finding" intent to preempt a state-specific alien registration scheme. *See DeCanas,* 424 U.S. at 362-63. But there is nothing in the federal alien registration scheme that evidences Congressional intent to preempt state laws that do not affect the uniformity of the national standard for alien registration.

Section 8 does not impose any additional requirement. If anything, it allows local law enforcement to accept additional evidence of alienage and thus is less rather than more restrictive than the INA. HB87 neither alters these or other registration requirements nor does it enhance any punishment for an individuals failure to comply with them.

Moreover, this precise argument failed in *Whiting*. In this recent decision, the Supreme Court made clear that where, as here, there is reliance

on a federal determination, "there can by definition be no conflict between state and federal law…." *Whiting*, 131 S. Ct. at 1981.

While Challengers complain about the imposition of additional criminal penalties for what they claim to be unfair or inconsistent enforcement of federal immigration law, they fail to acknowledge that Section 7 does <u>not</u> directly impact immigration as its enforcement relates to others who knowingly transport, harbor or entice an illegal alien and imposes no penalty on the immigrant whatsoever. They similarly fail to acknowledge that Section 8 requires first that the police officer receive verification that the individual is an illegal alien and only then allows the officer to take action – and even then, only when such action is otherwise "authorized by state and federal law." Simply stated, if federal law does not authorize local law enforcement to take action, Section 8 provides the officer with no additional authority. *See* O.C.G.A. § 17-5-100 (e). As the authority for arrest in Section 8 arises only when available under federal law, there can be no conflict.

Both Section 7 and 8 require probable cause that a crime has been committed as an element of the offense. Challengers argue that one Section can serve as a predicate for the other, but this argument is temporally flawed. For one Section to serve as the predicate for the other, there must first be a

completed crime under the first Section. That completed crime, in turn, necessarily requires probable cause that a separate crime has been committed.

Equally unavailing is Challengers' attempt to distinguish the scope of the predicate act in Section 7 and 8 through the emphasis on Section 7's language which requires that prior to arrest the suspect be, "committing another offense" and Section 8's language which requires, "probable cause that a suspect has committed a criminal violation." In reality, the variance in language is nonsubstantive. As the statute empowers law enforcement officers to act and law enforcement officers to arrest based upon probable cause and not a predetermination of guilt, the difference in language represents a distinction without a difference. Judges and juries determine guilt; officers act upon probable cause. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *Pickens v. Hollowell*, 59 F.3d 1203 (11th Cir. 1995). Section 7 does not suggest any higher bar than Section 8. Both require the officer to have probable cause to believe the offender committed a predicate criminal act prior to the rest of the statute coming into effect.

Challengers rely almost exclusively upon the reasoning in *Hines v. Davidowitz*, 312 U.S. 52 (1941) to find preemption. *Hines* is not applicable here. In *Hines* the state adopted identification requirements separate and

apart from those required by the federal government for those legally in the country and imposed criminal penalties for individuals who failed to comply with the requirement with no overlap between what the state required and what the federal government required. *Id.* at 67.

HB87, in contrast to the statute in *Hines*, specifically adopts federal determinations and definitions in determining validity of citizenship and does not authorize the arrest of any illegal alien who is not defined as such by federal law.[7] Where there is reliance on federal determinations there is no conflict between state and federal law. *Whiting*, 131 S. Ct. at 1981. Neither Challengers nor the *amici* point to any provision of the INA that supports a finding that Congress intended to exercise exclusive control rather than uniformity of purpose.[8] Moreover, as noted in the State Defendants' opening brief, Congress has encouraged involvement in the enforcement of the INA. (Blue brief p. 42-44). Lastly, the Supreme Court has already rejected the premise that Congress has occupied the field through the INA. *DeCanas*, 424 U.S. at 358; *United States v. Arizona*, 703 F. Supp. 2d 980, 999 (D. Ariz. 2010) (In *DeCanas*, "the Supreme Court

---

[7] Section 7 and 8 define illegal alien as, "a person who is verified by the federal government to be present in the United States in violation of federal immigration law." O.C.G.A. § 16-11-200 (a)(1); O.C.G.A. § 17-5-100 (a)(2)
[8] Congressional silence on the issue of preemption implies intent not to occupy a field. *Frank Bros.*, 409 F.3d at 891.

rejected the possibility that the INA is so comprehensive that it leaves no room for state action that impacts aliens.")

Because simultaneous compliance with federal and state law is possible, Challengers seek refuge in the last possible ground for preemption, vigorously contending that the Act stands as an obstacle to the accomplishment of Congress's objectives in enacting the INA.[9]  In making this argument Challengers contend that the existence of fifty different mechanisms for enforcement of federal immigration law would drastically impact foreign relations.   As support, Challengers offered quotes from the President of the United States, priorities established by the Executive Branch through the Department of Homeland Security, Affidavits from foreign nationals and *amici* support from foreign countries all claiming vast impact upon immigrants to this country. (Red Brief p. 34-35).   As the State Defendants pointed out in their opening brief, Congress contemplated a state's role in the enforcement scheme, specifically created opportunities for cooperation, and made clear that the proffered mechanisms were not the exclusive options available to the states. (Blue brief p. 46-47).   It is

---

[9] As noted in Part A above, assuming that HB87 does impact foreign relations in some way, this "harm" has not been experienced by Challengers and as such cannot support a cause of action by them. In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983);

Congress, not the President, the Executive Branch agencies or foreign nationals that has the power to pre-empt state law. *See North Dakota v. United States*, 495 U.S. 423, 442 (1990). When examining the INA in total, it is clear that Congress intended to encourage involvement of local governments both expressly and impliedly by establishing clear mechanism where states could formally agree to work in conjunction with the federal government while still making it clear that these mechanisms did not preclude local involvement in enforcement. *See* 8 U.S.C. § 1324; 8 U.S.C. § 1644.

## D.     EQUITIES FALL IN FAVOR OF THE STATE

Challengers make no effort to argue that the equities fall in their favor. They simply declare it to be true. (Red Brief p. 58). In reality, as with their arguments related to standing, the "harm" they face is tied to claims already dismissed or events completely unrelated to the statute at issue.

# CONCLUSION

For the above and foregoing reasons and the reasons presented in Appellants' opening brief, the decision of the District Court should be reversed.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN PACIOUS         558555
Deputy Attorney General


/s/  Devon Orland
DEVON ORLAND             554301
Sr. Assistant Attorney General

Please Address All
Communications To:

Devon Orland
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
(404) 463-8850 **/** Fax:  (404) 651-5304

# CERTIFICATE OF SERVICE

I do hereby certify that I have this date served the within and foregoing **REPLY BRIEF OF APPELLANTS** prior to filing same, by depositing a copy thereof, postage prepaid, in the United States Mail, properly addressed upon:

Andre I Segura
American Civil Liberties Union
Foundation-NY
125 Broad Street
18TH Floor
New York, NY  10004

Karen C Tumlin
National Immigration Law Center
Suite 2850
3435 Wilshire Boulevard
Los Angeles, CA  90010

Cecillia D Wang
ACLU Immigrant's Rights Project
39 Drumm Street
San Francisco, CA  94111

Katherine Desormeau
ACLU Immigrant's Rights Project
39 Drumm Street
San Francisco, CA  94111

Elora Mukherjee
ACLU Racial Justice Program
18TH Floor
125 Broad Street
New York, NY  10004

Kenneth John Sugarman
ACLU Immigrant's Rights Project
39 Drumm Street
San Francisco, CA  94111

Jonathan Blazer
National Immigration Law Center
405 14th Street, Suite 1400
Oakland, CA  94612

Linton Joaquin
National Immigration Law Center
Suite 2850
3435 Wilshire Boulevard
Los Angeles, CA  90010

Nora Preciado
National Immigration Law Center
Suite 2850
3435 Wilshire Boulevard
Los Angles, CA  90010

Chara Fisher Jackson
ACLU of Georgia
Building 400, Suite 425
1900 the Exchange, SE
Atlanta, GA  30339

Samuel Brooke
Southern Poverty Law Center-Al
400 Washington Avenue
Montgomery, AL  36104

Sin Yen Ling
Asian Law Caucus
55 Columbus Avenue
San Francisco, CA  94111

Tanya Broder
National Immigration Law Center
Suite 1400
405 14th Street
Oakland, CA  94612

Andrew H Turner
Southern Poverty Law Center-AL
400 Washington Avenue
Montgomery, AL  36104

Azadeh N Shahshahani
Aclu of Georgia
Building 400, Suite 425
1900 the Exchange, SE
Atlanta, GA  30339

Robert Keegan Federal , Jr
Federal & Hasson, LLP
Suite 1776
Two Ravinia Drive
Atlanta , GA  30346

Charles H Kuck
Kuck Immigration Partners LLC
8010 Roswell Road
Suite 300
Atlanta, GA  30350

Daniel Werner
Immigrant Justice Project
Southern Poverty Law Center
Suite 2150
233 Peachtree Street, NE
Atlanta, GA  30303

Danielle M Conley
Kuck Immigration Partners LLC
Suite 300
8010 Roswell Road
Atlanta, GA  30350

George Brian Spears
Law Office of Brian Spears
1126 Ponce De Leon Avenue
Atlanta, GA  30306

Mary C Bauer
Southern Poverty Law Center-Al
400 Washington Avenue
Montgomery, AL  36104

Socheat Chea
Socheat Chea, PC
Bldg 300, 500 Duluth Park Lane
Duluth , GA  30096

Christopher R Clark
Dewey & Leboeuf, LLP-NY
1301 Avenue of He Americas
New York , NY  10019

Henry L Solano
Dewey & Leboeuf, LLP-NY
1301 Avenue of the Americas
New York , NY  10019

Emmet J Bondurant , II
Bondurant Mixson & Elmore, LLP
1201 West Peachtree Street, NW
3900 One Atlantic Center
Atlanta , GA  30309-3417

Dale M. Schwartz
Dale M Schwartz & Associates
5500 Interstate North Parkway
Riveredge One, Suite 450
Atlanta , GA  30328-4662

Gerald Jason Thompson
The Thompson Law Firm
Suite 101
200 East Crogan Street
Lawrenceville , GA  30046

Farrin Rose Anello
Immigration Clinic
University of Miami School of Law
1311 Miller Drive, E257
Coral Gables , FL  33146

Rebecca Ann Sharpless
Immigration Clinic
University of Miami School of Law
1311 Miller Drive, E257
Coral Gables , FL  33146

Carla Gorniak
Dewey & Leboeuf, LLP-NY
1301 Avenue of the Americas
New York , NY  10019

Pickens Andrew Patterson, Jr.
Smith, Gambrell & Russell, LLP
Promenade II, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA  30309-3592

This 28th day of October, 2011.

/s/ Devon Orland
Devon Orland         Bar No. 554301
Counsel for Appellants